The next and final case on our docket is 5-13-0289, people v. Trenton v. Jefferson. We have Mr. Bailey. I can't read this name. Are you the attorney for the appellants? I am. I don't know your name. Michael Ornstein. Ornstein? Ornstein. O-R-E-N. Ornstein. Ornstein. I have you down as the appellate attorney. Okay. Whenever you're ready, Mr. Ornstein. Thank you. May it please the Court of Counsel? As said, Michael Ornstein, State Appellate Defender for defendant appellant Trenton Jefferson. Unless this Court has other plans, I plan on focusing mostly on the improper evidence and the misconduct. Your Honors, this was, at the very least, a very close case. You have three witnesses, all with motives to lie. Howard, the possible suspect, Davis, the jilted ex, and Farmer, the appellant who got years off his sentence. All with different stories about what my client supposedly did. Farmer described a drive-by shooting with no one getting out of a car. Howard described only my client Jefferson getting out. And Davis described old Jefferson and someone named Brownlee getting out. You have no physical evidence implicating my client. You have two shells, both from the same gun, contradicting Howard's story of two shooters. And you have not one but two juries showing skepticism at the least. The first jury, in the first trial, the jury sat on all kinds of notes and then hung. In the second jury, jury found that my client was only accountable even though all three witnesses had him firing a fatal shot and even though two of the three witnesses didn't have anybody else shooting. I guess the... The pleading stage or before trial that they were going on the theory of accountability? I think they have an obligation to... That the defendant not be surprised by it. I can't tell you exactly what went on in the first trial or I haven't seen the first trial that much, so I don't know how much notice they actually got. But I think you have some notice to let them know. Was that done at any point during the second trial? Second trial? Because I didn't familiarize myself with the first trial, I can't tell you for sure. What about the second trial? I didn't see anything in the second trial. You didn't see any notice, but isn't there some provision that notice has to be given to a defendant if the issue is accountability? Are you familiar with that? I think the idea is to not be surprised. I don't know... I don't... I can't point to any specific thing personally. Okay. Against this backdrop, though the jury heard evidence of little to no relevance but great prejudice, you have a proper character evidence. Davis told the jurors that her ex-boyfriend, Mike Klein, was a violent person, very violent, and that she feared him. There was no reason that should come into the state's case in chief. You have Davis' statements with no context or probative value. Statements that might show that he's a blowhard, but statements with great prejudice. I'll focus on three of them. First, you have Davis saying that Jefferson planned to tell a group called the Charlie Boys, one shot, man down. Now, the state doesn't claim any intrinsic relevance here. Only that it corroborated Farmer's story. Farmer was the person who was in jail with Mike Klein. Farmer said the shooting was motivated by a clash with people from Washington Park. Davis said the Charlie Boys were from Washington Park, but no testimony showed that this was the same group other than they happened to be from the same town. So its probative value is extremely low, if any, but the prejudice was high because it showed that Jefferson was the kind of person with character who would joke about a shooting case. Second, you have Davis saying that Jefferson threatened her. Quote, if you tell on me, I will kill you. Now, the state concedes that this occurred during an argument having nothing to do with the shooting. It points to nothing in the statement that was about the shooting. It argues only that Davis speculated that it was about the shooting. That's not relevance, and again, any marginal relevance was overwhelmed by the prejudice because after all, this was a death threat. Third, you have Davis saying that Jefferson made this vague admission, I hate that I did it. Again, the state points to nothing that I did. It means I did the Gosa shooting. There's nothing to find in this problem now, except Davis' subjective speculation. And that brings me to the second problem with this case. You have Davis speculating for or twice about Jefferson's thoughts. Davis said that when she heard Jefferson say, one shot men down, a quote made me think that Jefferson killed Marvin Gosa, but she had come to acknowledge that the only reason she thought that is because why else would he say that, or why other would he say that? That's not based on her perceptions under Rule 701. That's not relevant under Rule 401, and it's prejudicial under Rule 403. Davis also said that when he heard Jefferson say, if you tell on me, I will kill you, it again made her think that Jefferson killed Gosa, but again, because they had a mutual understanding that he did. Again, it's not based on her perceptions. It's not relevant, and again, it's prejudicial attack on his character. And then my client was finally denied a fair trial because of the state's opening and closing arguments. In opening argument, you have the state telling the jury that Jefferson's actions and his words, my emphasis, were consistent with guilt because he is guilty. But guilt must flow from evidence, not the other way around. In addition to which, the prosecutor had to know that the jury would hear a lot of Jefferson's words, which did not have a lot to do with guilt. Then in rebuttal argument, you have what the state calls its hypothesis. The premise was Howard's testimony that Jefferson said that he got the deceit. The hypothesis, well, if Jefferson didn't say it, Brownlee must have said it. Therefore, Jefferson was accountable. But there was no evidence that Brownlee said any such thing. As it turned out, accountability was precisely what the jury found, maybe because of the actual evidence or maybe because of his hypothesis. And it defined its burden downward, encouraging the jury to convict based upon what it believed, not upon who's beyond a reasonable doubt. Do you have any argument about the ineffective or effective assistance of counsel in this case? Well, the counsel was ineffective for not preserving these issues is the primary thing. When you say preserving them. In other words, we have to argue plain error because they were not arguing post-trial motion and they were not all objective. Some were and some were not, so there's four. But it doesn't matter because it's not a post-trial motion, so there's four for sure. Was there any, and I know it's plain error, but I just want to ask the question. Yeah. Was there a motion to eliminate file on behalf of the defendant as any of these witnesses? Well, there were a couple. Excuse me one second. There was a motion to eliminate file. There were two motions. There was a motion to bar threats by Jefferson, and that was denied. And I think that would go to both the testimony about him being a violent person and her being in fear of him. And also one of Davis' comments about if you tell on me, I'll kill you. I think that would also cover that. So there was that. And then there was also a motion for the state to disclose what hearsay statements Davis would give, and that was primarily more directed toward statements of Brownlee to Davis. So the first one. Go ahead. What about the argument that the state makes that it has a right to anticipate and deflect impeachment? Well, I mean, I think it doesn't have that right because if it had that right, then the defense would have no opportunity to not open that door. What was your question, Justice? I missed it. To anticipate and deflect impeachment testimony. Yeah. If you'll pardon me for one second. Are you asking about some of the evidence that came in that was not objected to? Yeah, in terms of the threats. The state's theory is that the threats were admissible to rebut, anticipatorily rebut, my client's argument about why Davis changed her story. Well, how can you do that if the client has a right not to take the stand? Well, I don't think you can. Well, I think it's possible that in rebuttal, if... There is no rebuttal if the client doesn't take the stand. Well, no, if there's no evidence, that's true. But when there is a cross-examination, she was crossed on, well, why didn't you change your story? And then the state might be able to say, well, she changed her story because of the defendant's measure. That's why she changed her story. Under that scenario, there has to be a document or something that proves she changed her story. I mean, you just can't pull information out of the air and say, didn't you say this to the grand jury? If you don't have the grand jury transcript or something that's before the grand jury, it's an improper question. But I would say it's even more improper because it was offered in the state's case in chief before my client had the opportunity to do anything or open any kind of door. One of my concerns was these motions. I mean, you said that there was a motion for the state to disclose the hearsay statements. Yeah. So somebody wanted the state to say, okay, what hearsay statements are you going to get when hearsay is inadmissible? I don't get that. Well, I mean, some hearsay, I mean, the omission of prior warning can be admissible, for example. But I think the defense counsel wasn't on notice or perceived that he wasn't on notice as to what was coming in. And he wanted to know what was being argued, what we are going to expect. And so for those reasons, we would ask that this court either reverse our right or give me after a new trial. Thank you. And you will have some time after Mr. Daly. Thank you. Mr. Daly, what say you today? Good afternoon, Your Honor. Good afternoon. Thank you. I'm going to go ahead and start with Justice Katz's couple of points of objection. With regards to accountability, as I sit here, I'm not sure of the laws with regards to advance notice. I please do not hold me to this. I thought the charging instrument was alleged as a defendant or from one who was accountable, which I think would give me – I don't, but I don't know that, and I'm not going to, you know – Well, you can't change your theory. No, well, correct. Unless – That's true. But I think that you'll see through the course of the case that there wasn't really any kind of surprise or question that this was a part of this theory that the state was going to pursue, particularly in light of the fact that there was going to be an instruction tendered as regards to whether the defendant personally discharged a firearm, which has mandatory sentencing add-ons. I'm going to – We'll see that in the record. I'm sorry? We'll see that in the record. You will, Your Honor. Yes, we will. The second thing I'm going to say – One of the things – excuse me. I'm sorry. I'm going to have to interrupt you here because I have read some of this record, and I have not read the volumes that are now sitting in the back here, but this girlfriend was allowed to blather on and on and on about things that had no dates, had no relevancy, at least in my mind, and that's when I asked about the motions in Lemonade. Correct. What was going on here with character evidence? There were some foundational issues, I would suppose. Thank you. You're following your sword. That's a good thing. Well, I'm following my sword a couple of times here. But right now I'm going to wield it in a duff, just in case, because I disagree with your characterization of the impeachment thing that you brought up. When we talk about – Let's talk about first – we'll talk about impeachment, but first let's talk about what did happen. And this lady, she went into his character. That was never put into issue by him? The characters are sort of intertwined with the impeachment question, I believe, Your Honor, because it comes up here in the context of anticipatorily bringing out why Rochelle Davis changed her story. I can't remember which one. A different version of what she gave ultimately on the witness stand. Now – Because he – so you're saying that she can say that he started sleeping with another woman so I changed my story? That's okay? No. What he could say, what she could say, and I believe the case law establishes that if there is a reason to do so, that impacts someone's concern about providing a truthful statement in the first place because of, say, personal safety. So when – Right. When the witness brought up things like, well, he said he's going to kill me or he's going to do this or that. But those weren't all – those were not all related to changes in statements. I mean, there were changes in statements made. But the statement that was changed related directly to her knowledge of what the defendant's involvement in the murder was. And that is attached, I think, inextricably to the notion that he made statements to her that she perceived were threatening if she were to cooperate and disclose the type of information that he knew that she had against him. Okay. So now when we talk about the impeachment, my understanding of impeachment is that you can use extrinsic evidence for impeachment purposes where you have to confront the individual with their prior inconsistent statement, then they admit or deny it, where she admitted it. So the impeachment is perfected at that point. So I don't think that they have to bring in, as Your Honor mentioned, a sheet of paper or something that she gave a prior statement. I think that once she admits that she had given a prior inconsistent statement to the police, that the impeachment is perfected. And I believe that the State, under those circumstances, can use that. If she admits it, I agree with you. Okay. So I think I just want to get that out in the open. Well, that's the point, is that the questioner has to know that the individual will admit or then the questioner has to bring in something to impeach the witness. A good lawyer is going to know the weakest part of the case as they're going forward. And so in this situation, we know that the first problem, first attack of impeachment for this particular witness is the fact that she lied to the police. And so by doing so and by getting her to admit up front that she did so, the lawyer then puts before the jury, okay, you're going to know this, but there's a reason why she did so. And I think that that's part of the reason that was part of the motion to eliminate her for trial and why the court admitted that type of evidence to begin with. But there was a lot of testifying going on by her. I mean, just a lot of, you know, this uncertain dates, things that were being said about his character. What do you have to say about that? His character was clearly not put into evidence by him. So how do you get character? Well, I think that's the only thing that really relates to character. The rest had to do with, I would submit, there are statements that had to do with how she at least perceived contextually that the defendant was making statements that implicated herself. Now this court made this very, I would be remiss not to point out, it's not been raised as an issue in the case. So we could talk about this, I suppose, from that perspective. What? Well, it's not been raised as an issue. That her statements were not properly admitted on a foundational purpose. At least that was the first thing your Honor mentioned. Yeah, no, no, no, because I thought it was. No, I think the statements were more based upon a relevancy type thing, that the statements were not directly connected to perhaps establishing the defendant's culpability of murder. There were more statements given as regards to just, maybe in that sense of a dab, to paint him in a bad light. I'll go with you on that one. I mean, like this one. She admitted she did not like Jefferson. He had cheated on her and given her a sexually transmitted disease. Now, how is that relevant? You know, and that's, I mean, I'm reading this and I'm thinking, you know, where's the check? Where's the balance? I get why, I understand completely why she was allowed to say certain things, but other things I'm not so sure. Yeah, I mean, I think that when you look at it, yeah, on number 12, I'm going to stop right here. I want to say something else. My track record is slightly different than the defendant's. The Zaire issue in this case is a big concern. It hasn't been brought up. I've attempted to perhaps give the best step forward that I can in distinguishing the facts of this case and just their civics admonitions to the Zaire. And I'm going to take a quick right turn on you, but I want to just sort of set up where my approach is on this case. So this will play into your Honor's ultimate decision making. I focus here perhaps on Arguments 1 and 2 because those are issues that this Court will have to decide if it ultimately elects to remand this for a new trial, in the event that it does find that there was a Zaire thing. So I want to be keen that that case in question comes up because then I do, if the Court sort of starts at that point and makes a determination where to go from it, it also kind of gives the Court an idea of how it's going to ultimately decide the case. Is it something to be decided in terms of was there a reversible error? Or is it something to be decided in terms of what's our admonition on remand in terms of what is not admissible for purposes of retrial? And that's why I think the questions that you raise are very pertinent, I think, in both regards to answering those particular inquiries. So I think in saying so, I think that in the remand context, I think we can probably look at each individual statement that's being challenged individually and decide whether it is or is not admissible. And I do think the Court makes a point that there are some perhaps a little closer to the line than the others. I do think statements that she makes with regards to what the defendant says to her about his involvement in the actual murder, even if it ultimately is someone inconsistent with what other people are saying, his types of statements. What I've attempted to do is I've attempted to emphasize that there is something of a distinction between confessions and admissions. And I cite this Aguilar case for that proposition. In Aguilar, essentially, you know, from an admissibility standpoint, statements made by a party opponent are considered admissions as long as they're proper under the context of probative and relevant. So that's where the relevancy issues come into play there. And that's where I think the defendant's argument is sort of honing in on is that these statements are not relevant. I would submit to that, notwithstanding any other perhaps foundational aspects of it, that the statement says they're standing alone, if given in the context in which they're given here, establish a culpable mind on the part of the defendant, then their relevancy becomes particularly important. It's quite obvious the statement for the defendant overtly says I did something or the other. But I think it's equally true where you have statements with, well, not the STD thing, but statements where the witness is making statements of, for instance, there's one that's challenged where she spoke to him at the jail and broke down in tears and said, I didn't mean to do it. I don't know why I did it. But how do you know what we're talking about there? I'm sorry? How do you know that you're talking about shooting this GOSA guy? Well, I think that that's basically how the witness perceived the statements being given. But that's not evidence. How a witness perceives some ambiguous statement is not evidence. It's their perception. But their perception is often informed by the factual circumstances in which that evidence is given. They're in jail. Let me clarify something. Wasn't he in jail for some other charge at the time? I was going to make that point. It was a way of conception. In fact, he had not yet been formally charged. And so I think the defense argument is there. And that's why I'm sort of doing this in my fallback position. If that being true, it wasn't really from her perspective anyhow. Without diminishing what you're saying, from her perspective, that's why she had perceived these types of statements as being kind of, you know, upset over his involvement in the murder. Is there anything else your Honor? I have one other question. I'm done. Okay. I have one other question. Yes. Do you see this verdict as a problem? No. No, because I think what happened here is, I mean, there's only one offense of murder. And we need to be clear on that. Whether it's by accountability or whether it's by principle, there's no distinction between the two legally. There may be a distinction between the two in terms of how the evidence is presented. But there's no problem in the verdict. So, as I attempted to argue, a jury, there's no doubt there's some evidentiary conflicts, I suppose. And I even admitted in a brief that's a bit fuzzy about whether the defendant was actually accountable or principled. But if the defendant is involved in the murder, whether it's accountable or principled, the defendant has committed the offense of murder. So the jury's failure to find the unreasonable doubt, the aggravating circumstance in order to get the sentence in the answer of the person with this charge, is not inconsistent with anything with regards to finding the defendant guilty of murder. But they don't know about the aggravating circumstances, right? They do, because they have to find the unreasonable doubt. Okay. But the only witness who says that he shot, that he had the gun, and that he got out of the car to shoot, was the woman in the back seat who was the girlfriend of the other guy. Actually, I'm not saying the witness saw him shooting. I didn't say that. But the only person that was around, who was in the back seat, and who says he did it, is not believed by the jury. The defendant sure talked about it a lot himself. Well, that's your interpretation. I guess it was. I don't think there's much interpretation until it's a guy in jail and I shot him. No, but I mean, the jury didn't believe that. Probably felt it was a proven unreasonable doubt. I mean, if we're talking absolute belief, I don't know what they're thinking. That's why I asked you if it was a problem. But that's okay. It's not a problem. Not legally. Morally. I think that's all I have. I think I'm done. Thank you, Your Honor. Thank you, Mr. Daly. Rebuttal? Mr. Ornstein. Thank you, Your Honor. I'm only planning maybe one point. Going to the character evidence. I said in my brief, this divine case talking about not letting the state introduce evidence of a defendant's valid character unless the defendant first opens the door. And I said it clearly in Graham's saying that you can't bring a character evidence as part of the case in chief. That being the case, I don't see how the state could possibly, in the case in chief, anticipatorily because you can't anticipate what the defendant will do. The defendant may decide to leave the door closed and forego some impeachment of the witness. So for those reasons and anything else you feel like talking about, but otherwise, I ask that this court either reverse all right or bring it back to a new trial. Okay. Thank you very much, gentlemen. Thank you, Your Honor. This matter will be taken under advisement and an order will issue in due course.